IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION

| | |
|---|---|
| **NUTRIEN AG SOLUTIONS, INC.,** )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**NATHANIEL G. BARTL, SR.;** )<br>**NATHANIEL G. BARTL, JR.;** )<br>**ADAM J. BARTL; and** )<br>**LILLIAN CATTLE COMPANY,** )<br>)<br>Defendants. ) | CASE NO. |

## COMPLAINT

Nutrien Ag Solutions, Inc., a Delaware corporation ("Nutrien") by and through its undersigned counsel, brings this action against Defendants Nathaniel G. Bartl, Sr. ("Bartl, Sr."), Nathanial G. Bartl, Jr. ("Bartl, Jr."), Adam J. Bartl ("Adam Bartl"), and Lillian Cattle Company ("Lillian Cattle") (collectively, "Defendants") as follows:

### PARTIES

1. Nutrien is a citizen of Delaware as it is a Delaware corporation and a citizen of Colorado as its principal place of business is in Loveland, Colorado, and it is registered to do business in the State of Alabama.

1

2. Defendant Nathaniel G. Bartl, Sr., is, upon information and belief, over the age of 19 years, and a citizen of Alabama because he is domiciled in Baldwin County, Alabama, and may be served at 14820 County Road 91, Elberta, Alabama 36530.

3. Defendant Nathaniel G. Bartl, Jr. is, upon information and belief, over the age of 19 years, and a citizen of Alabama because he is domiciled in Baldwin County, Alabama, and may be served at 33954 Zuzu Lane, Lillian, Alabama 36549.

4. Defendant Adam J. Bartl is, upon information and belief, over the age of 19 years, and a citizen of Alabama because he is domiciled in Baldwin County, Alabama, and may be served at 32630 Faircloth Road, Lillian, Alabama 36549.

5. Defendant Lillian Cattle Company is, upon information and belief, an unregistered general partnership with its principal place of business in Elberta, Alabama. Upon information and belief, the partners of Lillian Cattle Company are the individuals described in the preceding paragraphs. Defendant Lillian Cattle Company may be served at c/o Nathaniel Bartl, Sr. 14325 County Road 91, Elberta, Alabama 36530.

## JURISDICTION AND VENUE

6. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Nutrien and all

Defendants, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00, as set forth below.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as a substantial part of the events giving rise to the claim occurred in the Southern District of Alabama and the Defendants reside and do business in the Southern District of Alabama.

## STATEMENT OF FACTS

8. Nutrien adopts and incorporates by reference Paragraphs 1 through 7 as if fully set forth herein.

9. On February 26, 2020, Defendant Lillian Cattle entered into a Credit Agreement (the "Credit Agreement") for Nutrien to provide and deliver goods and services for their farming operation on open account. The Agreement was signed individually by Nathan G. Bartl, Sr., Nathan G. Bartl, Jr. and Adam Bartl. The Agreement was also personally and unconditionally guaranteed by Defendants Bartl, Sr., Bartl Jr., and Adam Bartl. A true and correct copy of the Credit Agreement is attached hereto as Exhibit A[1].

10. At various times, Defendants ordered goods and services from Nutrien. Subsequently, Defendants became delinquent in payment for the goods

---

[1] Pursuant to Fed. R. Civ. P. 5.2, Nutrien has redacted some personal identifier information that appears on the Contract.

and services and have failed and/or refused to pay the balance owed under the Credit Agreement as of this date.

11. In the event of default, Defendants agreed to pay Nutrien's reasonable attorney's fees, plus all costs and expenses of collection. As such, attorney's fees, expenses, and costs are hereby claimed and demanded.

12. Nutrien demanded payment for the full balance by way of an October 27, 2025 demand letter, but payment was not received, and Defendants did not dispute the amount owed. A true and correct copy of the Demand Letter is attached hereto as Exhibit B.

13. The total balance owed under the Credit Agreement is $228,711.75, as of August 31, 2025, plus interest that has accrued and will continue to accrue until a judgment in favor of Nutrien is rendered.

## COUNT I
## BREACH OF CONTRACT

14. Nutrien adopts and incorporates by reference paragraphs 1 through 13 above as if fully set forth herein.

15. Nutrien substantially performed its contractual obligations under the Credit Agreement. However, Defendants failed and/or refused to pay the balance owed.

16. Under the terms of the Credit Agreement, Defendants agreed to pay Nutrien for goods and services provided by Nutrien to Defendants for their farming operation.

17. Due to Defendants' default and breach of the Credit Agreement, Defendants are liable for damages in the amount of the total balance of their account plus finance charges and interest accruing through the date of judgment and payment of all costs of collection incurred by Nutrien, including reasonable attorney's fees and expenses related to this action.

WHEREFORE, the premises considered, Nutrien demands judgment against Defendants in the amount of $228,711.75, plus pre-judgment interest that shall continue to accrue until judgment in favor of Nutrien is rendered, attorney's fees and costs, and any such other relief the Court may award.

## COUNT II
## OPEN ACCOUNT

18. Nutrien incorporates by reference paragraphs 1 through 17 above as if fully set forth herein.

19. Defendants opened an account with Nutrien whereby Nutrien would provide goods and services for their farming operation and promised to pay all amounts supplied on open account.

20. Subsequently, Defendants ordered goods and services from Nutrien on the resulting open account at various times.

21. Defendants have failed and/or refused to pay the amounts owed on the account in accordance with the terms and conditions of the Agreement.

WHEREFORE, the premises considered, Nutrien demands judgment against Defendant in the amount of $228,711.75, plus pre-judgment interest that shall continue to accrue until judgment in favor of Nutrien is rendered, attorney's fees and costs, and any such other relief the Court may award.

## COUNT III

### ACCOUNT STATED

22. Nutrien adopts and incorporates paragraphs 1 through 21 as if the same were set forth herein.

23. Defendants owe Nutrien $228,711.75, plus additional interest/finance charges that shall continue to accrue until a judgment in favor of Nutrien is rendered, and attorneys' fees and costs on an account stated between Nutrien and Defendants.

WHEREFORE, the premises considered, Nutrien demands judgment against Defendants in the amount of $228,711.75, plus pre-judgment interest that shall continue to accrue until judgment in favor of Nutrien is rendered, attorney's fees and costs, and any such other relief the Court may award.

## COUNT IV

## GOODS SOLD AND DELIVERED

24. Nutrien adopts and incorporates paragraphs 1 through 23 as if the same were set forth herein.

25. Defendants ordered goods from Nutrien for their farming operation.

26. Nutrien sold and delivered those goods to Defendants as requested.

27. Defendants have failed and/or refused to pay for those goods and Nutrien has been damaged as a result.

WHEREFORE, the premises considered, Nutrien demands judgment against Defendant in the amount of $228,711.75, plus pre-judgment interest that shall continue to accrue until judgment in favor of Nutrien is rendered, attorney's fees and costs, and any such other relief the Court may award.

Respectfully submitted this 1st day of December, 2025.

    s/ Patrick L. W. Sefton
    Patrick L. W. Sefton (ASB-8341-N47P)
    Kazia J. Hale (ASB-1232-M00F)
    Attorneys for Nutrien Ag Solutions, Inc.

OF COUNSEL:
CAPELL & HOWARD, P.C.
P. O. Box 2069
Montgomery, AL 36102-2069
Telephone: (334) 241-8000
Email:  pat.sefton@chlaw.com
       kazia.hale@chlaw.com

## **CLERK**

Nutrien will serve Defendants by private process server at the following addresses:

Nathaniel G. Bartl, Sr.
14820 County Road 91
Elberta, AL 36530

Nathaniel G. Bartl, Jr.
33954 Zuzu Lane
Lillian, AL 36549

Adam J. Bartl
32630 Faircloth Road
Lillian, AL 36549

Lillian Cattle Company
c/o Nathaniel G. Bartl, Sr.
14325 County Road 91
Elberta, AL 36530

/s/Patrick L.W. Sefton
*Of Counsel*

# EXHIBIT "A"

# CREDIT AGREEMENT



# CREDIT APPLICATION – Credit Agreement

**\*\*Please ensure all fields are complete and accurate before submitting application for processing\*\***

## Applicant Information:

- Business Legal Name (Buyer): Lillian Cattle Company
- Business DBA Name: 2/15/18
- Mailing Address: ~~14820 Cty Rd 92~~ 14325 co Rd. 91
- Physical Address (if different): Same
- City/State/Zip: Elberta AL 36530
- City/State/Zip: ___
- County: Baldwin
- Preferred Number: 251 747-2472
- Email: gulfcoastfarm83@gmail.com
- Date of Birth: [redacted] 63
- SSN: [redacted] 8692

**Business Information:** ☐ Sole Proprietorship  ☐ Corporation  ☐ LLC  ☐ Limited Partnership  ☑ General Partnership  ☐ Trust

- Federal Tax ID: [redacted] 8238
- Number of years in business: 2
- State of Organization: Alabama
- Date Organized: 2/15/18
- Any bankruptcy filing on applicant(s) and/or entity? ☑ No  ☐ Yes  If yes, Chapter: ___  Status: ___

### Corporate Officers/Partners/Member (Required for Corporations, LLCs, and Partnerships) or Authorized Representative(s):

**1. Name:** Nathaniel Gregory Barth
- Mailing Address: 14820 co Rd 91
- Email: ___
- SSN: [redacted] 8692
- City/State: Elberta AL.
- Preferred Contact Number: (251) 747-2472
- Date of Birth: [redacted] 63
- Zip Code: 36530
- Job Title: Partner
- Driver's License No: [redacted] 9859
- County: Baldwin
- ☐ Corporate Officer  ☑ Partner  ☐ Member

**2. Name:** Adam Barth
- Mailing Address: ~~bartladam~~ 32630 Fairclothe Rd.
- Email: bartladam@yahoo.com
- SSN: [redacted] 8418
- City/State: Lillian, AL
- Preferred Contact Number: (850) 221-1008
- Date of Birth: [redacted] 1988
- Zip Code: 36549
- Job Title: Partner
- Driver's License No: [redacted] 2366
- County: Baldwin
- ☐ Corporate Officer  ☑ Partner  ☐ Member

**Farming Information:** ☑ Full-Time  ☐ Part-Time  Number of Years Farming: 12

Counties crops grown: **Baldwin**

- Acres Farmed: 1800   Owned: 680   Rented: 1200
- # Beef Cattle: 250   # Cow/Calf: 50   # Dairy Cows: 0

### Crop Planning Information:

| Crop | Acres | Average Yield | (Less) % Used for Feed | (Less) % Landlord's Share | Price Per Unit | Total Crop Value | Insurance Coverage: RP YP etc. Type | % |
|---|---|---|---|---|---|---|---|---|
| Corn | 400 | 150 bu | 15% | — | 4.50 | 270,000 | YP | 55 |
| Cotton | 200 | 800 lb | | — | .65 | 104,000 | YP | 55 |
| Peanut | 825 | 4000 lb | | — | 425/tn | 700,000 | YP | 55 |
| Grain sorghum | 225 | 80 bu | 15% | — | 4.00 | 72,000 | YP | 55 |

**Applicant Financial and Income Information:** Requests under $500,000 complete below or provide lender prepared balance sheet.
Requests over $500,000 attach most recent Profit & Loss Statement and year-end balance sheets for all applicants.

| | Assets | Liabilities | Income (Annual) | |
|---|---|---|---|---|
| Current Value (Cash, Crop, etc.) | $ 600,000 | $ 900,000 | Gross Farm | $ 1,275,000 |
| Intermediate Value (Machinery, etc.) | $ 1,300,000 | $ 300,000 | Livestock | $ 470,000 |
| Long Term Value (Real Estate, etc.) | $ 3,100,000 | $ 750,000 | Non-Farm | $ |
| Total Value | $ 5,000,000 | $ 1,950,000 | Source | |

**Line of Credit Information:** Do you have an approved operating line of credit? ☑ Yes  ☐ No  If yes, complete below

| Lender Name | Approved Amount | City/State | Bank Officer |
|---|---|---|---|
| United Bank | 450,000 | Atmore AL | Rachel Holland |

## CREDIT AGREEMENT – NY RESIDENTS: RETAIL INSTALMENT CREDIT AGREEMENT

The undersigned ("Buyer") agrees to the following terms and conditions for the credit sale of fertilizer, chemicals, seed and related products and services for business purposes only ("Products") by Nutrien Ag Solutions, Inc., doing business as Nutrien Financial, and its affiliates, successors and assigns ("Seller") to Buyer from time to time during the Term. When this Agreement is approved by Seller, Seller will deliver an "Approval Letter" to Buyer, which Approval Letter is incorporated herein by reference upon delivery of such Approval Letter by Seller to Buyer.  Upon delivery of an Approval Letter to Buyer, Seller and Buyer agree that Buyer may purchase Products from Seller up to the amount of the Credit Limit, and that the purchase price for such Products will become due and payable on the Maturity Date. Borrower understands and acknowledges that this Agreement is a separate credit financing program offered by Seller and supplements the terms and conditions of sale that govern the sale of Products by Seller to its customers.   The credit made available by Seller to Buyer under this Agreement is for the credit sale purchase of Products and is not a loan.

shall become insolvent, or shall admit in writing inability to pay its debts as they become due; (vi) the death of any Buyer or guarantor who is a natural person; (vii) a petition for relief is filed by or against Buyer or guarantor under the United States Bankruptcy Code, as now constituted or hereafter amended, or any other applicable federal or state bankruptcy, insolvency, or other similar law, or Buyer shall consent to the appointment of or taking possession by a receiver, liquidator, assignee, trustee, custodian, sequestrator (or other similar official) of Buyer for all or substantially all the property of Buyer; (viii) the assets or property of Buyer are liquidated; or (ix) Buyer is the subject of any mandatory mediation under any state or federal farm or agricultural debt mediation program.

17. **Remedies.** Upon the occurrence of any Event of Default, Seller, at Seller's option, may declare all Credit Obligations to be immediately due and payable without presentment, demand, notice of nonperformance, notice of protest, protest, or notice of dishonor, and notice of intent to accelerate, all of which are expressly waived by Buyer, and the obligation, if any, of Seller to extend any further credit under this Agreement shall immediately cease and terminate. Seller shall have the remedies available to it at law or equity, including all remedies of a secured party under the UCC or other applicable law.
18. **Disclaimer.** Buyer has the absolute obligation to make full payment of the Credit Obligations, despite any losses, damage or destruction to the farm products produced or other Products sold under this Agreement, and despite any financial losses or failure to realize profits from Buyer's operations. Buyer acknowledges and agrees that results in agricultural operations cannot be predicted or guaranteed by Seller. Any advice or recommendation by Seller's employees or agents is solely by way of recommendation. Buyer's implementation of any such recommendation is exclusively Buyer's decision and Seller will have no liability for any such decision. Any claims related to the Products shall not constitute a defense by Buyer for nonpayment of the Credit Obligations.
19. **Governing Law.** This Agreement will be construed and interpreted in accordance with federal law and, to the extent not preempted by federal law, the laws of the state in which the sale of the Products was made, without regard to internal principles of conflict of laws.
20. **Assignment.** This Agreement cannot be assigned by Buyer without the prior written consent of Seller. Seller may assign this Agreement without notice to Buyer.
21. **Waiver.** No waiver by Seller, whether express or implied, of any default will operate as a waiver of any other default or of the same default on a future occasion. Any failure by Seller to enforce or require strict adherence to any of the terms or conditions of this Agreement will not constitute a waiver by Seller of a breach of any of the other terms or conditions of this Agreement.
22. **Severability.** If any provision(s) of this Agreement are prohibited or are otherwise unenforceable, all other provisions will remain valid and enforceable.
23. **Entire Agreement.** This Agreement, together with Approval Letters, the Credit Application, invoices, account statements, and other terms and conditions applicable to the sale of Products, contains the entire agreement and understanding between Buyer and Seller and supersedes all prior agreements and understandings, whether oral or in writing, relating to the same subject matter unless otherwise specifically reaffirmed or restated in an applicable Approval Letter. In the event of a conflict, the terms of this Agreement shall control unless otherwise set forth herein.
24. **Survival.** This Agreement will continue in full force and effect until all of the Credit Obligations have been satisfied in full; provided, however, that any section that, by its terms suggests survival beyond termination, will so survive until the natural expiration thereof.
25. **Binding Effect.** This Agreement will be binding upon and inure to the benefit of Buyer and Seller and their respective successors and permitted assigns.
26. **Relationship of the Parties.** Seller is neither an agent for nor a fiduciary of Buyer in regard to Buyer's business operations or Buyer's commercial and financial transactions.
27. **Telephone Monitoring and Recording.** Buyer agrees that Seller and its marketing partners, agents, and others calling at Seller's request or on Seller's behalf may contact Buyer as provided in this paragraph. Seller and its marketing partners, agents, and others calling at Seller's request or on Seller's behalf may contact Buyer for any lawful reason, including for the collection of amounts owed to Seller and for the offering of products or services to Buyer from time to time. No such contact will be deemed unsolicited. Buyer specifically agrees that Seller and its marketing partners, agents, and others calling at Seller's request or on Seller's behalf may (i) contact Buyer at any address (including email) or telephone number (including wireless cellular telephone, ported landline or VoIP telephone number) as Buyer may provide to Seller from time to time or that Seller is able to determine belongs to Buyer, even if Buyer has asked to have the number added to any state or federal do-not-call registry; (ii) use any means of communication, including, but not limited to, postal mail, electronic mail, telephone or other technology, to reach Buyer; (iii) use automatic dialing, an artificial voice, a prerecorded voice or any announcing devices which may use artificial voices or play recorded messages and (iv) send text messages to Buyer's telephone. Buyer may withdraw this express written consent at any time by contacting Seller at Nutrien Ag Solutions, Inc.—Withdrawal of Express Consent, 3005 Rocky Mountain Avenue, Loveland, CO 80538 and telling Seller specifically what address or telephone number not to use. As used in this section, "Buyer" shall mean and include Buyer and Buyer's representatives, agents, principals, officers, members, and employees.
28. **JURY WAIVER. BUYER AND SELLER (EACH A "PARTY" AND COLLECTIVELY "PARTIES), WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THIS AGREEMENT (INCLUDING ANY APPLICABLE APPROVAL LETTERS) AND GUARANTY (COLLECTIVELY "DOCUMENTS") OR THE ENFORCEMENT HEREOF, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW OR DECLARED BY A COURT OF LAW TO BE AGAINST PUBLIC POLICY. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER.**

<u>THIS IS A COMMERCIAL TRANSACTION</u>.

BUYER AGREES NOT TO USE ANY PORTION OF THE
CREDIT GRANTED BY SELLER FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.

**IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.**

1. **Defined Terms.** Capitalized terms not otherwise defined in this Credit Agreement ("Agreement") have the meaning ascribed to such terms in the Approval Letter.
2. **Promise to Pay.** Buyer agrees to pay Seller the purchase price for all Products purchased by Buyer together with finance charges, fees and expenses due under this Agreement (collectively, the "Credit Obligations") on or before the Maturity Date.
3. **Finance Charges.** Finance charges will accrue on Buyer's account balance at the Applicable Rate until the Credit Obligations are paid in full. In no event shall the finance charges exceed the maximum rate allowed by law. Any finance charges which would for any reason be deemed unlawful under applicable law shall be applied as a credit on Buyer's account. After an Event of Default or the Maturity Date, finance charges shall accrue at the Default Rate.
4. **Maturity Date.** The Credit Obligations shall become due and payable in full on that date (the "Maturity Date") which is the earlier of (i) the Termination Date set forth in the Approval Letter, or (ii) the date on which Seller accelerates payment of the Credit Obligations pursuant to Section 17 of this Agreement.
5. **Renewal and Extension.** At Seller's discretion, Seller may complete an annual review of Buyer's Credit Limit and consider a renewal or adjustment of the Credit Limit or the Term. Any renewal, adjustment or extension, including any new terms or extended Term, must be set forth in writing and signed by Seller. Buyer understands that the decision to renew or adjust the Credit Limit or to extend the current Term is determined by Seller in Seller's sole discretion. Material changes to Buyer's financial position and/or Buyer's repayment history with Seller and/or other creditors may affect consideration.
6. **Payments.** Seller may apply payments or credits first to finance charges, fees and expenses due under this Agreement and subsequently to the outstanding principal balance, at the discretion of Seller. Acceptance by Seller of any payment which is less than payment in full of all amounts due and owing at such time shall not constitute a waiver of Seller's right to receive payment in full at such or any other time. Buyer may make prepayments on the Credit Obligations at any time without penalty.
7. **Conditions to Purchases.** Credit purchases under this Agreement may not be approved by Seller unless each of the following conditions have been satisfied: (i) this Agreement has been duly executed by Buyer and any guarantor(s) and delivered to Seller; (ii) Seller shall have delivered an executed Approval Letter to Buyer; (iii) no Event of Default shall have occurred and be continuing as of such date; (iv) Buyer's aggregate purchases shall not have exceeded the Credit Limit, and (v) the requested purchase shall not cause Buyer to exceed the Credit Limit.
8. **Account Statements.** Buyer agrees that invoices or delivery tickets evidencing purchases do not need to be signed to be valid and specifically waives any defense regarding unsigned invoices or delivery tickets, including invoices for custom spreading or application. Seller will provide a monthly statement of account. Statements are deemed accurate if not disputed within 60 days as provided in the statement. Seller's accounting month and closing date are determined by Seller's billing practices and may not coincide with a calendar month.
9. **Product Returns.** If Buyer returns any Products financed under this Agreement and such Product return is accepted by Seller pursuant to its existing policies and terms of sale, Seller will credit Buyer's account for the return pursuant to its policies and terms of sale. No cash refunds will be provided. Any such returns will not reduce the Credit Obligations owing until a credit is applied by Seller to Buyer's account.
10. **Financial Records.** Buyer agrees to (i) maintain complete and accurate financial books and records for Buyer's business, (ii) permit reasonable access thereto to Seller upon request, and (iii) provide periodic financial information and crop plan information as requested by Seller from time to time in a form acceptable to Seller.
11. **Fees and Expenses.** Buyer is liable for and shall pay all reasonable costs and expenses of every kind incurred by Seller in connection with the collection of the Credit Obligations, including, without limitation, reasonable attorneys' fees and court costs. These costs and expenses shall include, without limitation, any costs or expenses incurred by Seller in any bankruptcy, reorganization, insolvency or other similar proceeding of Buyer. Buyer promises to pay any fees and expenses set forth in the Approval Letter, costs related to filing and recording fees, lien searches, the costs of searches of public records, application fees, and fees for returned payment.
12. **Liens.** (a) To secure payment and performance of the Credit Obligations, Buyer assigns, transfers, and pledges to Seller a lien and security interest in the following assets of Buyer, wherever located and whether owned now or acquired or arising in the future (collectively, the "Collateral"): accounts, chattel paper, deposit accounts, documents, general intangibles, goods, instruments, inventory, investment property, government programs and payments, farm products, warehouse receipts, supporting obligations, cash and other monies of Buyer, books and records of Buyer relating to any of the foregoing, all additions, accessions, accessories, and replacements of any of the foregoing property, and all products and proceeds of all or any of the foregoing (as such terms are defined in the Uniform Commercial Code (the "UCC")), and such lien and security interest shall be perfected upon an Event of Default; (b) In addition to any other security pledges granted to Seller, Buyer grants Seller a purchase money security interest in all Products financed through this Agreement and the proceeds thereof; and (c) Seller expressly reserves any and all agricultural or statutory liens to which it may be entitled under applicable law. Within seven days after receiving written notice that Seller has perfected a lien under this Section 12, Buyer agrees to provide Seller a written schedule of the buyers (including names, addresses, and phone numbers) to or through whom Buyer may sell any farm products. Seller is authorized to give written or oral notice to such persons of the security interest granted hereunder as required or permitted under the UCC, the Federal Food Security Act of 1985, 7 U.S.C.A. § 1631, or other applicable law. Seller is authorized to disclose the social security number or the taxpayer identification number of Buyer and any other information as may be required to comply with applicable law.
13. **Insurance.** Buyer will maintain insurance in such amounts and against such risks as are consistent with past practice and will show proof of such insurance upon request of Seller.
14. **Representations and Warranties.** Buyer hereby represents, warrants, and agrees as follows:
    a. The Products and the credit extended under this Agreement will be used solely for business or commercial purposes.
    b. Buyer has and will maintain full and absolute title to the Collateral, free of all security interests, liens, and encumbrances other than the security interest granted to Seller and security interests, liens and encumbrances of Buyer's current operating lender and purchase money security interests of equipment finance or leasing companies incurred in the ordinary course of Buyer's business.
    c. Buyer's true legal name, federal identification number, organizational number and state of organization or state of domicile are accurately reflected on the Credit Application. Buyer is duly formed and validly existing under the laws of the state of its organization. Buyer has not, during the 5 years preceding the date of this Agreement, been known as or used any corporate, fictitious, or assumed name other than the name by which it is identified in this Agreement and those names identified in the Credit Application. Buyer will not change its state of organization, state of domicile, or its chief executive office or its name, identity or corporate structure in any manner unless it shall have given Seller not fewer than 30 days' prior written notice thereof. If Buyer is an individual or is not a registered organization, all information provided by Buyer to Seller concerning the address of the chief executive office of the unregistered entity or the primary domicile of the individual is true and correct. Such address shall not be changed without providing not fewer than 30 days' prior written notice thereof. If Buyer is individual, Buyer shall provide a current copy of his/her driver's license or government issued identification to Seller upon execution of this Agreement and thereafter upon request by Seller and after amendments or renewals of such identification.
    d. The execution, delivery, and performance by Buyer under this Agreement have been duly authorized by all necessary action on the part of Buyer. The person signing below on behalf of Buyer has been duly authorized to execute this Agreement on behalf of Buyer.
    e. Buyer has no present intention to close or cease operating Buyer's business, in whole or in part, temporarily or permanently. Buyer is solvent and not contemplating any insolvency or bankruptcy proceeding. No eviction or foreclosure is pending or threatened against Buyer or Buyer's assets.
15. **Credit References.** Seller may adjust the Credit Limit from time to time in Seller's sole discretion. Buyer authorizes Seller to contact Buyer's References (as defined in the Credit Application and updated from time to time) from time to time as Seller deems necessary or appropriate for account approval, review, servicing, collection, renewal or extension.
16. **Events of Default.** The occurrence of any of the following will constitute an "Event of Default" under this Agreement: (i) Buyer fails to make any payment to Seller as and when due; (ii) Buyer fails to comply with the terms of this Agreement or any other agreement between Buyer and Seller; (iii) one or more judgments, orders, or awards for the payment of money are entered against Buyer; (iv) any representation, warranty, certificate, statement, or record made in this Agreement, the Credit Application, any other agreement between Buyer and Seller, or delivered in writing to Seller by Buyer proves to be untrue; (v) Buyer shall make an assignment for the benefit of creditors,

**Nutrien Ag Solutions**

**CREDIT APPLICATION – Credit Agreement**

**Nutrien Financial**

**Seller's Signature:** *See* Buyer's Approval Letter.

The undersigned: (1) offers the information in this Credit Application, which is incorporated herein by reference into the Agreement, to Seller to induce consideration for credit and (2) acknowledges and agrees to all terms and conditions of this Credit Application, Agreement, and Approval Letter including consent to electronic communication and arbitration. **Buyer authorizes Seller to obtain consumer credit reports on Buyer from time to time for any legal purpose, including account review and collection. New York Residents: Upon request, Buyer (i) will be informed whether or not consumer reports were obtained and (ii) if reports were obtained, will be informed of the names and addresses of the credit reporting agencies that furnished the reports.** Seller may provide a copy of this document as evidence of the consent of Buyer to the release of information.

NOTICE TO BUYER

1. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES.
2. YOU ARE ENTITLED TO A COMPLETELY FILLED IN COPY OF THIS AGREEMENT
3. YOU MAY PAY, AT ANY TIME, YOUR TOTAL INDEBTEDNESS

NEW YORK RESIDENTS: RETAIL INSTALMENT CREDIT AGREEMENT

**ENTITY BUYER** *Corporation, LLC/LLP, Ltd. Partnership, Trust*

Entity Name: _____

By (Printed Name): _____

Title: _____

Signature: _____

Date: _____

*[Handwritten at top right: Nathaniel Gregory Bartl / Gregg Bartl / 2/25/20]*

**INDIVIDUAL BUYER(S)** *Sole Proprietorship, General Partnership*

Printed Name: **NATHANIEL G BARTL JR**
Signature: *[signed]*
Date: **2-26-2020**

Printed Name: **Adam Bartl**
Signature: *[signed]*
Date: **2-26-2020**

## Guaranty

The undersigned (each a "Guarantor") guarantee(s) the payment and performance of and assume(s) personal liability for the payment and performance of all Credit Obligations due and owing Seller for Products sold to Buyer pursuant to the foregoing Agreement, including any extensions or renewals of the Maturity Date, unless expressly revoked in writing. Guarantor(s) agree(s) to pay Seller's collection expenses and reasonable attorneys' fees, as provided in the Agreement. Guarantor(s) expressly authorize(s) Seller to obtain credit and asset reports on Guarantor(s). This guaranty is absolute, unconditional and continuing and will remain in effect until the Credit Obligations have been paid, performed or discharged in full. Guarantor expressly waives presentment for payment, demand, notice of demand and of dishonor and nonpayment of the Credit Obligations, protest and notice of protest, diligence in collecting and in the bringing of suit against any other person, and Seller shall be under no obligation to notify Guarantor of its acceptance of this Guaranty or of any advances made or credit extended on the faith hereof or the failure of Buyer to pay any of the Credit Obligations as they mature, or to use diligence in preserving the liability of any person (including, without limitation, Buyer) on the Credit Obligations or in bringing suit to enforce collection of the Credit Obligations. To the full extent allowed by applicable law, Guarantor waives all defenses given to sureties or guarantors at law or in equity other than the actual payment of the Credit Obligations and waives, to the full extent allowed by applicable law, all defenses based upon questions as to the validity, legality or enforceability of the Credit Obligations. Seller, without authorization from or notice to any Guarantor and without impairing or affecting the liability of Guarantor(s) hereunder, may from time to time at its reasonable discretion and with or without valuable consideration, alter, compromise, accelerate, extend or change the time or manner for the payment of any or all of the Credit Obligations owed to it, extend additional credit and financial accommodations and otherwise create additional Credit Obligations, increase or reduce the rate of interest thereon, take and surrender security, exchange collateral by way of substitution, or make changes of any sort whatever in the terms of payment of the Credit Obligations owed to it or of doing business with Buyer.

The death of any Guarantor will not terminate this guaranty. Guarantor(s), recognizing that his/her/their individual credit history may be a necessary factor in the evaluation of this personal guarantee, hereby authorize(s) Seller to obtain consumer credit reports on the undersigned from time to time for any legal purpose, including account review and collection. New York Residents: Upon request, Guarantor (i) will be informed whether or not consumer reports were obtained and (ii) if reports were obtained, will be informed of the names and addresses of the credit reporting agencies that furnished the reports. A guarantor may revoke his or her guarantee as to future extensions or renewals of the Agreement by delivering notice to Guaranty-Revocation at 3005 Rocky Mountain Avenue, Loveland, CO 80538 at least 30 days prior to end of the Term. **GUARANTOR WAIVES TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE AGREEMENT AND GUARANTY OR THE ENFORCEMENT HEREOF, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW OR DECLARED BY A COURT OF LAW TO BE AGAINST PUBLIC POLICY. GUARANTOR ACKNOWLEDGES THAT GUARANTOR MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER.**

Printed Name/Title: **NATHANIEL BARTL JR**   Signature: *[signed]*

Printed Name/Title: **Adam Bartl**   Signature: *[signed]*

| Salesman Name: | Salesman Number: |
|---|---|
| Branch Manager: | Date: |

# EXHIBIT "B"

# DEMAND LETTER



**ATTORNEYS AT LAW**

**MONTGOMERY** | AUBURN–OPELIKA | TUSCALOOSA

Kazia J. Hale

334.241.8041 *direct*
Kazia.Hale@chlaw.com

October 27, 2025

**VIA FEDERAL EXPRESS**

Lillian Cattle Company
Nathaniel G. Bartl, Sr.
Nathaniel G. Bartl, Jr.
Adam J. Bartl
14325 County Road 91
Elberta, AL 36530

      Re:    Nutrien Ag Solutions, Inc.
               Account # ▆8882  - $228,711.75

Dear Messrs. Bartl,

      The above-referenced account with Nutrien Ag Solutions, Inc. ("Nutrien") has been forwarded to our law firm for collection. The records provided by Nutrien indicate that the total amount owed on this account is $228,711.75. Please be advised that the Credit Agreement was personally guaranteed by each of you. Accordingly, the total amount owed is demanded from Lillian Cattle Company <u>and</u> each of you individually.

      Interest continues to accrue monthly and will continue to accrue on the balance for this account until such is paid. Please be advised that if full payment is not received by <u>November 10, 2025</u>, Nutrien will initiate a lawsuit to collect all monies owed and may further seek to enforce its rights and remedies under the Credit Agreement.

      If you are interested in discussing a potential resolution of this matter, please contact me by no later than <u>November 10, 2025</u> with a firm proposal.

      Please be advised that Nutrien reserves all rights available to it under the account documents and Alabama law. We look forward to hearing from you very soon.

      Very truly yours,

      Kazia J. Hale